UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| FRANCES S. TURNER, | ) | No. CV 07-03416-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law.

1     There are three disputed issues, separated into five categories,

2   set forth in the JS.   The first concerns whether the ALJ properly

3   assessed Plaintiff's credibility as to her excess pain.   The second

4   issue concerns the consideration of the opinions of treating

5   physicians, Drs. Tepper and Ergener.   The final issue is whether the

6   Administrative Law Judge ("ALJ") erroneously relied on flawed

7   vocational testimony.   Before addressing these issues, the Court will

8   briefly summarize the medical evidence in the case.

9

10                      **SUMMARY OF MEDICAL EVIDENCE**

11     The ALJ evaluated the medical evidence and determined the

12   following severe impairments pursuant to the five-step sequential

13   analysis mandated by the regulations.   These severe impairments are

14   set forth in the following portion of the decision:

15          "The medical evidence establishes that the [Plaintiff]

16       has the medically determinable impairments of

17       musculoligamentous strain/sprain of the cervical with status

18       post anterior cervical discectomy and fusion at C4-C5, C5-C6

19       with residuals; cervicalgia with cephalgia, secondary to

20       overuse of adjacent levels; status post musculoligamentous

21       sprain/strain of the lumbar spine, stable with residuals;

22       mechanical back syndrome, consistent with facet arthrosis;

23       and mild bilateral carpal tunnel syndrome (documented by

24       EMG/NCS of March 2003)."

25   (AR 19.)

26

27     The parties do not dispute the ALJ's evaluation of severe

28   impairments.

Plaintiff has been employed in various capacities at Ralphs Supermarkets, and suffered a slip-and-fall industrial injury on November 21, 2002. (AR 230.) She suffered a rib fracture, and injuries to the cervical area of her spine, resulting in some radiculopathy. (AR 230.) In February 2003, she was seen by Dr. Tepper, an orthopedic surgeon, who referred her for an MRI and a discogram. (Id.) On September 2, 2003, she underwent outpatient cervical spinal surgery (AR 150-153), performed by Dr. Tepper.

Dr. Tepper next saw Plaintiff on October 27, 2003. (AR 220-222.) Dr. Tepper found that Plaintiff had made "excellent progress" subsequent to the surgery and Plaintiff reported that she was "much more significantly improved than she was before her surgery, ..." (AR 220-221.)

On November 17, 2003, Plaintiff visited Dr. Tepper and reported that she had severe pain in her cervical spine area with "working out." She reported that the pain radiated down to both shoulders with intermittent mild pain, and that there was mild pain to her lumbar spine with walking. (AR 143.)

In an examination report of January 5, 2004, Dr. Tepper noted that Plaintiff had increased pain with activities, particularly repetitive or impact activities, but that she was making gradual improvement. She had ongoing headaches. She was instructed on a home exercise program, stretching and strengthening, and to curtail most of her physical activities. (AR 139-141.)

On March 8, 2004, Plaintiff was again examined by Dr. Tepper, who reported that Plaintiff was not yet permanent and stationary and remained temporarily totally disabled. Dr. Tepper indicated that the source of her neck and headache pain appeared to be overexertion. He

recommended that Plaintiff avoid bending, lifting, twisting or heavy exertion and other activities which provoke the onset of neck pain and headache. (AR 135-138.)

Plaintiff was also examined and treated from April 2004 to November 2004 by Dr. Ergener, who appeared to maintain a common office with Dr. Tepper.  During the April 26, 2004 examination, Plaintiff complained of moderate pain to her cervical spine with radiation to both shoulders and arms, and that the pain increased with activity. She also complained of moderate pain to her lumbar spine with radiculopathy to her left hip and buttock.  On examination, Dr. Ergener found moderately limited range of motion of the cervical spine, but that the motion was synchronous.  Upper extremity range of motion was also found to by synchronous, and the upper extremity neurological was grossly intact.  Plaintiff was advised to continue with her home exercise program.  Plaintiff reported her overall improvement at 80%. (AR 202-205.)

Plaintiff was next seen by Dr. Ergener on June 7, 2004, at which time Plaintiff again reported overall improvement to be 80%. Plaintiff complained of intermittent mild pain to her cervical spine with radiation to both shoulders and arms, and again, that the pain increased with activity.  Objective findings were consistent with Dr. Ergener's previous examination, and again, he advised Plaintiff to continue with her home exercise program. (AR 198-201.)

Plaintiff was next seen on July 7, 2004 by Dr. Tepper.  Plaintiff indicated she continued to improve, but described persistent headaches after episodes of exertion.  She had residual complaints regarding her neck, both shoulders, and low back pain that radiate into both hips and down both legs.  Dr. Tepper's examination revealed some restricted

motion in the cervical as well as lumbar spine and slightly restricted motion of her shoulders and wrists. He found no neurological deficits. He opined that she had lost approximately 75% of her pre-injury capacity for lifting, bending or twisting her head, pushing or pulling, and precluded her from prolonged cervical positioning and prolonged activities above the shoulder level. Without further treatment for the bilateral shoulders, she was precluded from heavy lifting greater than 10 pounds, forceful pulling or pushing, and reaching overhead. (AR 206-214.)

On October 18, 2004, Plaintiff was again seen,[1] and complained of pain in her cervical spine, left hand and wrist, shoulders, lower back, left hip and left trunk/ribs area. Physical examination indicated a 30% restriction in motion of her cervical spine, with some tenderness and spasm in the paraspinal muscles, and some diminished upper extremity grip strength. Plaintiff had full range of motion in the shoulders. It was recommended that Plaintiff receive a neurological evaluation for her complaint regarding headaches. (Id.)

On November 29, 2004 and January 12, 2005, Plaintiff was seen by Dr. Ergener. (AR 188-192, 247-250.) Dr. Ergener noted Plaintiff complained of pain in her cervical spine, that she suffered headaches about four times a week, and had moderate pain in her lumbar spine radiating down to her left hip and leg. There was restricted motion of her cervical and lumbar spine, positive bilateral straight-leg raising tests, and some restricted motion in her shoulders. (Id.)

On July 20, 2005, Dr. Ergener completed a "Medical Source Statement" which assessed Plaintiff's physical capacity. (AR 224-227.)

---

[1]    The report bears both Dr. Tepper's and Dr. Ergener's names at the signature line. Neither physician hand-signed the report.

1  Dr. Ergener indicated that Plaintiff could occasionally lift ten
2  pounds, frequently lift less than ten pounds, stand and/or walk about
3  six hours in an eight-hour workday, and had no sitting restrictions.
4  She had some limitation in pushing or pulling in her upper extremities
5  and had occasional limitations in stooping and kneeling.  She had
6  limited functions in reaching in all directions, including overhead.
7  Dr. Ergener indicated that overhead use of her arms could irritate the
8  surgical area and adjacent levels of discs in the neck. (Id.)

9      On August 5, 2005, Plaintiff received a facet joint injection in
10  the cervical area from Dr. Sabbaghi, who associated with both Dr.
11  Tepper and Dr. Ergener.  This resulted in Plaintiff's reporting a
12  significant decrease in her neck pain. (AR 254-255.)

13      In connection with her Workers Compensation claim, Plaintiff was
14  evaluated by Dr. Berman, an orthopedic surgeon, on December 16, 2004.
15  (AR 229-244.)  After taking a history from Plaintiff, and conducting
16  an examination, Dr. Berman rendered the opinion that Plaintiff could
17  not return to her past work as a grocery checker, but that she was
18  only limited from heavy work activities, repetitive overhead
19  activities, and activities requiring repetitive neck motions. (Id.)

20      The Court notes that the ALJ accurately summarized these medical
21  evaluations, and the parties do not dispute the correctness of the
22  ALJ's summary of these examinations in his decision. (See AR at 20-
23  23.)

24

25              **THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY**

26      In his decision, the ALJ considered Plaintiff's allegations of
27  subjective pain symptoms, but determined that her subjective symptoms
28  are not disabling.  He relied upon the following reasons:

6

1.   Plaintiff has made excellent recovery since her cervical spine surgery in September 2003, and has reported overall significant improvement in her cervical spine problem;

2.   Plaintiff has never been hospitalized for any reason;

3.   Plaintiff has never been referred or sought treatment at a pain control clinic;

4.   The reported objective findings are sparse and do not support the alleged degree of impairment;

5.   After receiving a facet joint injection in August 2005, Plaintiff reported a significant decrease in neck pain;

6.   Although Plaintiff testified to some restriction in daily activities, she indicated she is able to drive daily and pick up her daughter at school.

(AR 24.)

As Plaintiff indicates in her portion of the JS, her testimony at the hearing indicated an extreme condition of ongoing pain. (AR 271, et seq.)  She indicated she is constantly dealing with the pain and her headaches.  She has pain radiating from her neck down both of her arms which has caused numbness in her left hand, and pain radiating down her back and left hip.  She has headaches three or four times a week which she attributes to her neck injury.  She is "constantly in pain." (AR 272.)  The radiculopathy is always there. (Id.)  She exercises twice a week on a prescribed home exercise program but does not use her treadmill, because it irritates her hip.  Her housework consists of light dusting and not picking anything heavy up.  She loads dishes in the dishwasher.  She does not do yardwork.  She drives on a daily basis.  She is able to do light grocery shopping.

1    Plaintiff's characterization of the extent of the reasons set
2    forth by the ALJ is incomplete. (See JS at 5.)  In his assessment of
3    her credibility, the ALJ went beyond citing to the objective medical
4    records and a notation that Plaintiff was able to drive her daughter
5    to and from school.

6    As one factor in the credibility analysis, it is proper for an
7    ALJ to evaluate the medical evidence to determine whether it is
8    consistent with Plaintiff's subjective claims, (See 20 C.F.R.
9    §§404.1529(c)(1), (2); 416.929(c)(1), (2) (2007).)  See also Rollins
10   v. Massanari, 261 F.3d 853, 856-857 (9th Cir. 2001). Here, Plaintiff's
11   testimony at the hearing as to the intensity and persistence of her
12   pain far exceeded even her own subjective reporting to her physicians
13   during her lengthy period of treatment, as summarized both in the
14   ALJ's decision and in this Memorandum Opinion.  During the course of
15   her treatment, while Plaintiff noted various areas of pain and
16   functional limitations, they were nowhere as severe as she claimed
17   during her hearing.

18   The ALJ also noted that Plaintiff has not been hospitalized for
19   any reason.   This would be correct with regard to inpatient
20   hospitalization, but the Court does note that Plaintiff reported to
21   her treating physicians that on several occasions she went to an ER
22   due to headache pain.  In addition, the ALJ noted that Plaintiff has
23   not been referred to or sought treatment at a pain control clinic.
24   Certainly, a conservative course of treatment is a factor to consider,
25   especially in light of extreme complaints of constant or agonizing
26   pain.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).  The
27   Court does note that Plaintiff did receive facet joint injections in
28   her cervical area in August 2005, and this did result in diminishment

of pain.

Finally, the ALJ noted Plaintiff's testimony as to "somewhat restricted daily activities," and in particular noted her ability to drive on a daily basis. (AR at 24.)

Taken as a whole, the Court concludes that the ALJ's credibility analysis was well-supported by reference to the proper credibility evaluation factors. Moreover, it is important to note that in his decision, the ALJ did not reject outright Plaintiff's description of her pain; rather, he concluded that her subjective symptoms were not disabling. (AR at 23-24.) For these reasons, the Court concludes that there is no error in the ALJ's credibility determination.

**THE ALJ PROPERLY ASSESSED MEDICAL OPINIONS OF TREATING AND EXAMINING PHYSICIANS IN ARRIVING AT PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY ("RFC")**

In issues 2, 3 and 4 in the JS, Plaintiff asserts, respectively, that the ALJ failed to consider Dr. Tepper's opinion; failed to give controlling weight to Dr. Tepper's opinion; and did not give adequate reasons to prefer Dr. Ergener's opinion to that of Dr. Tepper. As to each of these issues, the Court finds no error.

While the parties engage in a lengthy exegesis and debate over the law regarding evaluation of the opinions of treating physicians, from a factual point of view, the records do not support Plaintiff's essential contention that Dr. Tepper was her primary treating physician, while Dr. Ergener was in some sort of secondary position. As the Court has noted, the medical records submitted by both of these physicians indicate that they at least share an office together. More importantly, the reports submitted by Dr. Ergener are under the

heading, "Primary Treating Physician's Progress Report." (See, for example, AR at 188.)  Both Dr. Tepper and Dr. Ergener have earned the status of Diplomate, American Board of Orthopedic Surgery. (See, Id.)

Contrary to Plaintiff's extensive argument in support of her position that no adequate reason was given for preferring Dr. Ergener's opinion to that of Dr. Tepper, the ALJ's decision in fact does provide articulated reasons.  The ALJ acknowledged the opinions of each of these doctors, as the Court has indicated in its summary discussion.  Further, the ALJ acknowledged that there are conflicting opinions regarding Plaintiff's RFC. (See AR at 23.)  The ALJ stated that he adopted Dr. Ergener's opinion for the following specific reasons:

> "Dr. Ergener has been the [Plaintiff's] treating orthopedic surgeon since 2003,[2] and therefore, has a complete picture of the [Plaintiff's] medical history and treatment.  His reported objective findings support his opinion of the [Plaintiff's] residual functional capacity, and his opinion is more consistent with the entire record.  Moreover, his opinion is the most recent in the record regarding the [Plaintiff's] residual functional capacity."

(AR at 23.)

The ALJ's reasoning is supported by the record.  Dr. Berman examined Plaintiff on December 16, 2004, and provided a functional analysis similar to Dr. Ergener's, only limiting her from heavy work

---

[2]     The Court's review indicates the relevant time period is April through November, 2004.

1  activities, and repetitive overhead activities.[3]

2      Plaintiff's argument that Dr. Ergener only saw Plaintiff because
3  Dr. Tepper may have been unavailable is completely unsupported by the
4  record, and the Court takes it as purely speculative.  Indeed, after
5  October 2004,[4] Plaintiff was seen only by Dr. Ergener as her treating
6  source.  It was valid for the ALJ to consider the most recent medical
7  opinions as to Plaintiff's functionality in determining her RFC,
8  especially in view of the fact that the medical records indicate that,
9  following her cervical surgery in 2003, Plaintiff gradually and
10 continually improved with regard to her symptomology and functional
11 abilities.

12      Not only was Dr. Ergener's opinion as to Plaintiff's functional
13 abilities the most recent one, but, as the ALJ correctly observed, it
14 was the most consistent with that of examining physicians.  Here, the
15 Court references the opinion of Dr. Berman, who reached essentially
16 identical functional conclusions as did Dr. Ergener.  Moreover, the
17 ALJ took into account the report of the non-examining State Agency
18 physician, which, among other things, limited but did not preclude
19 Plaintiff in regard to her overhead reaching. (AR 178-185, 23.)  It is
20 certainly the law that the ALJ may, among the mix of opinions,
21 consider opinions of non-examining physicians, in determining the
22 ultimate conclusion as to a claimant's functional abilities.

23      Thus, that portion of Dr. Tepper's opinion which precluded

24 _____

25      [3]    In any event, it would appear that Plaintiff's primary
   complaint regarding the ALJ's failure to adopt Dr. Tepper's opinion is
26 that Dr. Tepper, in a July 7, 2004 report, precluded Plaintiff from
   overhead reaching. (AR 212, 21.)
27

28      [4]    As to that visit, as the Court has noted, the report does
   not make it explicit which physician Plaintiff saw.

Plaintiff from overhead reaching was inconsistent with the opinions of her other treating physician, an examining physician, and the State Agency physician.  These factors were properly considered by the ALJ. (<u>See</u> S.S.R. 96-2p.)  Plaintiff's citation to 20 C.F.R. §404.1527(e)(2) is inapposite, in that Dr. Tepper's opinion is in fact contradicted by substantial evidence. (<u>See</u> JS at 18.)  <u>See</u> <u>also</u> <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005).

What is present in this case is the common situation in which there are some divergences in medical opinions among treating, examining, and non-examining sources.  It is the ALJ's role to properly evaluate any such divergences or discrepancies, according to appropriate standards.  Here, the opinions adopted by the ALJ were supported by independent clinical examination.  <u>See</u> <u>Andrews v.</u> <u>Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995).

For the foregoing reasons, the Court finds no error with regard to the ALJ's decision concerning the matters raised in issues 2, 3 and 4 in the JS.

## THE ALJ DID NOT COMMIT ERROR AT STEP FIVE
## OF THE SEQUENTIAL EVALUATION PROCESS

Plaintiff's final issue is that the ALJ committed error at Step Five of the sequential evaluation process.  After having found that Plaintiff cannot perform her past relevant work, the ALJ utilized a vocational expert ("VE") to see whether available jobs could be identified at Step Five.  The VE's testimony is found at AR 285-297. The hypothetical posed to the VE upon which he thereafter identified available jobs is found at AR 288.  Based on the VE's testimony that Plaintiff could perform such other jobs as credit card clerk, check

cashier, and food checker, hotel and restaurant industries, the ALJ summarized this testimony in his decision (AR 24), and then found that, at Step Five, Plaintiff could perform these jobs. (AR 26, Finding 12.)

Plaintiff raises various complaints of a technical nature with regard to this determination.  First, Plaintiff notes that while the ALJ determined that Plaintiff can perform only sedentary work, and indeed, this was incorporated within the hypothetical (see JS at 32, AR at 288), one of the jobs identified by the VE actually requires light exertion, not sedentary.  Plaintiff takes this argument from the VE's testimony that the DOT number of the "food checker" jobs is 211.462-014. (See AR at 289.)  Indeed, based on that DOT number, this would be correct.  Clearly, the job described was "food checker (hotel and restaurant)," and the DOT code for this is 211.482-014.  Indeed, this is how the ALJ summarized this portion of the VE's testimony in the decision (see AR at 24), and it is the job title and DOT decision identified in the ALJ's findings in the decision. (See AR at 26, Finding 12.)  Despite Plaintiff's complaints that this is a substantial error, it is nothing more than a typographical error.  It is certain that the job identified by the VE was that of "food checker, hotel and restaurant industries," and therefore, the correct DOT number is 211.482-014.  This is significant because that job is sedentary, and requires math level 2 skills, identical to the skills required by Plaintiff's past relevant work.

There is no requirement that the VE or the ALJ identify multiple available job positions, as long as one of the positions identified is sufficient to qualify at the Step Five level.  The job of "food checker" does so qualify, and therefore, the Court need not devote

significant attention to the balance of Plaintiff's argument regarding asserted error at this step of the evaluation process.  In any event, the Court concurs with the Commissioner's argument that the level of math skills required by a position is explained in Appendix C of the DOT, as math skills which can be obtained from both formal education and job experience.  Considering Plaintiff's work and educational background, and the existence of her transferrable skills, combined with the ALJ's hypothetical which asked the VE to "assume a person of the same education, experience and age as the [Plaintiff]," the identification of these jobs was not erroneous based on the level of math skills associated with each of them.

For the foregoing reasons, the decision of the ALJ will be affirmed.  The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: February 27, 2008              /s/
                                      VICTOR B. KENTON
                                      UNITED STATES MAGISTRATE JUDGE